UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

O'NEIL GOMEZ,

       Plaintiff,

  - against -

THE CITY OF NEW YORK, et al.,

       Defendants.

REPORT AND
RECOMMENDATION

13-CV-1822 (VSB)(RLE)

To the HONORABLE VERNON S. BRODERICK, U.S.D.J.:

## I. INTRODUCTION

On April 14, 2014, Defendants filed a motion to enforce settlement against Plaintiff O'Neil Gomez ("Gomez"), alleging that a valid oral settlement agreement between the Parties had been reached. (Doc. No. 18) For the reasons set forth below, I respectfully recommend that the Defendants' motion be **DENIED**.

## II. BACKGROUND

On March 19, 2013, Gomez filed this action raising claims of false imprisonment and excessive force by New York City Police Officers arising out of his March 6, 2012 arrest. (Pl.'s Mem. In Opp. to Mot. to Enforce Settlement ("Pl. Opp.") at 2; Decl. of Noreen Stackhouse In Supp. of Def.'s Mot. to Enforce Settlement Agmt. ("Stackhouse Decl.") 1:2.) At the time of the alleged settlement, Gomez was represented by Robert Nicholson, and Defendants by Noreen Stackhouse.

After evaluating the merits of Gomez's claim and participating in limited discovery as envisioned by the Southern District of New York's "§1983 Plan," Defendants decided to take a "no pay" position and asked to opt out of the 1983 Plan. (Stackhouse Decl. 2:4.) The Court held a status conference on December 12, 2013, and set a discovery schedule. Defendants allege that

during the conference, Nicholson "repeatedly requested that defendants revisit the issue of settlement, and stated ... that plaintiff was not looking for a large sum of money." (*Id.* at 2:6.) At this time, Nicholson showed Stackhouse pictures of Gomez's bruised face the day after the arrest. (*Id.* at 2:7.)

Stackhouse alleges that, shortly after the status conference, Nicholson again asked that Defendants revisit the issue of settlement. Stackhouse told Nicholson that she would discuss the issue with her client and asked him to email her the pictures of Gomez. (Stackhouse Decl. 2:9.) Nicholson allegedly repeatedly stated that he would accept five thousand dollars to settle this case but, when Stackhouse informed him that five thousand was too high, stated that he could "take" three thousand five hundred dollars. (*Id.* at 2:10-2:11.) When Stackhouse asked Nicholson if he would accept three thousand to settle, Nicholson allegedly, "after a few seconds of what appeared to [Stackhouse] to be internal deliberation ... stated that he would accept $3,000." (*Id.* at 3:12-3:13.) Nicholson's assistant emailed the pictures of Gomez to Stackhouse later that day. (*Id.* at 3:14)

On or about December 18, 2013, Stackhouse spoke with Nicholson and offered three thousand dollars to settle the case. Nicholson allegedly asked if it was possible to get three thousand five hundred dollars. When Stackhouse replied in the negative, he accepted the initial offer. (Stackhouse Decl. 3:16-3:17.)

On December 19, 2013, Stackhouse emailed Nicholson the settlement paperwork, which included a Stipulation and Order of Dismissal, a Stipulation of Settlement, a General Release, and an Affidavit of Liens. (Stackhouse Decl. 3:19.) In that email, she advised Nicholson that the two stipulations had to be signed by him and the General Release and Affidavit of Liens had to be signed by Gomez. (*Id.* at 3:20.) By January 21, 2013, not having received a reply from

Nicholson, Stackhouse sent him an email reminder. (*Id.* at 4:21.) She did not receive a response until February 3, 2014, when Nicholson called Stackhouse and stated that Gomez would not sign the settlement paperwork because Gomez had not actually agreed to settle. (*Id.* at 4:22-4:23.) Nicholson allegedly went further, stating that when he accepted the settlement, he was accepting on his own behalf, not Gomez's. (*Id.* at 4:24.) As such, his acceptance did not mean that Gomez had accepted the settlement. (*Id.* at 4:24.) Nicholson stated that he was working to get Gomez's consent, but that Gomez did not consent at that time and wished to obtain a different attorney. (*Id.* at 4:25.)

Gomez alleges that "from the onset of this litigation, [he] made it very clear to Mr. Nicholson that [he] would NOT settle unless the defendant's made a substantial offer to compensate [him] for [his] numerous injuries." (Affidavit of Plaintiff ("Pl. Aff.") at ¶ 6.) Gomez alleges that Nicholson did not inform him of any proposed settlement until February 2014. (Pl. Aff. at ¶ 11.) He also alleges that he never authorized such a settlement and, until that point, was unaware that Nicholson had been engaging in any settlement discussions. (*Id.* at ¶ 13.) Between February 7, 2014, and February 20, 2014, Gomez and Nicholson had multiple contentious telephone conversations that culminated in Gomez firing Nicholson. (*Id.* at ¶ 15-16.)

On February 21, 2014, Defendants filed a letter motion asking the Court to enforce the settlement agreement. (Stackhouse Decl. 4:26.) On February 26, 2014, the Parties appeared before the Court for a status conference. At that conference, Nicholson stated that he previously believed he had the authority to settle this case, but that it later became clear to him that Gomez disputed that authority. (*Id.* at 4:28.) At this same conference, Nicholson indicated his desire to withdraw as Gomez's attorney and Amy Rameau, Esq., appeared as new counsel. (*Id.* at 5:29-

3

5:30.) The Court gave Defendants leave to file a motion to enforce the settlement agreement, and the Parties' briefing on this matter is now before the Court.

## III. DISCUSSION

### A. There Is No Binding Agreement Between the Parties.

"Parties may enter into a binding contract orally, and the intention to commit the agreement into writing, standing alone, will not prevent contract formation." *Powell v. Omnicorn*, 497 F.3d 124, 129 (2d Cir. 2007.) It is the intention of the parties to be bound that controls whether an oral settlement agreement is valid. *See Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 322 (2d Cir. 1997); *see also Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). This Circuit "appl[ies] a four-pronged balancing test to determine whether the parties, who orally agree to settle a matter but fail to fully execute documents to that end, intend to be bound by those oral representations." *Wesley v. Corr., Officer Badge #9417*, 2008 WL 41129, *29 (S.D.N.Y. Jan. 2, 2008). The factors the court must consider include:

> (1) Whether there has been an express reservation of the right not to be bound in the absence of writing; (2) whether there has been a partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed in writing.

*Ciaramella*, 131 F.3d at 323.

#### 1. The Parties Did Not Intend to be Bound Until the Settlement Agreement was Reduced to Writing.

Parties who do not intend to be bound until a settlement agreement is reduced to writing are not bound until that time. *Powell*, 497 F.3d at 129. This Circuit has found that "the presence of a merger clause is 'persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.'" *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (quoting *Ciaramella*, 131 F.3d at 324). The merger clause in the Stipulation of Settlement

4

sent by Defendants to Nicholson contained the following language:

> This Stipulation and Order contains all of the terms and conditions agreed upon by the parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Stipulation and Order regarding the subject matter of the instant proceeding shall be deemed to exist or bind the parties hereto, or to vary the terms and conditions contained herein.

(Stipulation of Settlement at ¶ 7.)

The clause above is similar to language in other cases where courts in this Circuit have found an express reservation of the parties' intentions not to be bound until written execution. See *Kaczmarcysk*, 414 F. App'x at 355–56 ("This Agreement contains and constitutes the entire understanding and agreement of the parties and supersedes and cancels all previous negotiations, agreements, commitments and writings in connection therewith."); *Ciaramella*, 131 F.3d at 324 ("This Settlement Agreement and General Release constitutes the complete understanding between the parties, may not be changed orally and supersedes any and all prior agreements between the parties."); *see also Nieves v. Community Choice Health Plan of Westchester, Inc.*, 08-CV-321 (VB) (PED) WL 5531018, at *3 (S.D.N.Y. Nov. 14, 2011) ("This Agreement and the Exhibits hereto represent the entire agreement and understanding between the Parties as to the subject matter hereof and supersedes all previous agreements and discussions between the Parties as to the matters herein addressed.).

Moreover, Defendants requested a specific form of acceptance of their settlement offer. (Stackhouse Decl., Exhibit B.) Stackhouse's email containing the settlement paperwork stated that both Nicholson and Gomez had to sign certain documents, some of which had to be notarized. (*Id.*) The stipulation itself stated: "[P]laintiff shall execute and deliver to defendant City of New York's attorney all documents necessary to effect thus settlement, including, without limitation, a General Release ... " (Stipulation of Settlement at ¶ 3.) This language has been interpreted as a request for a specific form of acceptance, the absence of which prevents the

5

formation of a binding contract. *See Vesterhalt v. City of New York*, 667 F. Supp. 2d 292, 303 (S.D.N.Y. 2009) (finding that the plaintiff's failure to return documents meant a binding contract was not created). There is no evidence that the Parties intended to be bound in the absence of a written contract.

### 2. There was No Partial Performance of the Agreement.

"Partial performance is an unmistakable signal that one party believes that there is a contract; and the party who accepts the performance signals, by that act, that it also understands a contract to be in effect." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 75–76 (2d Cir.1984). However, "necessary steps taken in furtherance of negotiations do not count as partial performance." *P.A. Bergner & Co. v. Martinez*, 823 F. Supp. 151, 157 (S.D.N.Y. 1993). Partial performance requires some actual performance, such that one party has conferred something of value upon the other party, which the other party has accepted. *Nieves*, 2011 WL 5531018 at *6.

Despite Defendants' contention, the act of sending the settlement documents to be signed did not constitute partial performance of the settlement agreement. *See Ciaramella*, 131 F.3d at 321, 325 (finding that forwarding execution copies of a settlement to be signed did not constitute partial performance). The consideration promised to Gomez, the payment of a lump sum, has not been paid by Defendants. There is no evidence of partial performance in this case.

### 3. The Parties Did Not Reach Agreement on All Contract Terms.

"The existence of even minor or technical points of disagreement in draft settlement documents [are] sufficient to forestall the conclusion that a final agreement on all terms had been reached." *See Ciaramella*, 131 F.3d at 325 (internal quotations omitted). Stackhouse and Nicholson allegedly agreed upon the material terms, namely the settlement amount, in their oral agreement. (Stackhouse Decl. 3:17.) Gomez argues, however, that the Affidavit of Status of

6

Liens included in the settlement agreement, was not discussed in the oral agreement. (Pl. Opp. at 8.) This affidavit would allow city agencies to collect on any outstanding debts that Gomez owes, and deduct those debts from the settlement amount. Although Stackhouse informed Nicholson of the affidavit in an email, there was no acceptance or agreement upon this term. (Stackhouse Decl., ¶ 23-24.)

### 4. The Agreement is Not the Type that is Usually Committed to Writing.

Courts typically find that more complex agreements, with payment over several years or requiring several drafts, are committed to writing. *See Cedric Kushner Promotions, Ltd. v. King*, No. 98 Civ. 6859 (WHP), 1999 WL 13732, at *2 (S.D.N.Y. Jan 11, 1999) ("The final factor is whether the agreement at issue is the type of instrument that is usually committed to a writing. For these purposes, courts have considered both the amount of money at stake as well as the magnitude and complexity of the deal."). In this case, the agreement only involves a single-sum, one-time payment to Gomez from the City, in exchange for Gomez dismissing his claims against the City. The agreement is not sufficiently complex so that it would usually be committed to writing.

### B. Apparent Authority

Though "the decision to settle a case rests with the client," there is a presumption that "an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had the authority to do so." *In re Artha Mgmt. Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). The authority may be actual or apparent. *United States v. Int'l Bhd. of Teamsters*, 986 F.2d 15, 20 (2d Cir. 1993). An attorney's actual authority "may be inferred from the words or conduct of a client which the client had reason to know would be regarded by the attorney as authorization to settle." *Joseph v. Worldwide Flight Servs., Inc.*, 480 F. Supp. 2d 646, 653 (E.D.N.Y. 2007) (quoting *United States v. Manning*, 107 F.3d 5, 1997 WL 62973, at *1 (2d Cir. 1997)). Having

found that there is no enforceable settlement, however, the Court does not reach the question of whether Nicholson had the authority to settle.

### IV.  CONCLUSION

Having balanced the four factors set forth in *Ciaramella*, the Court finds that the Parties did not intend to be bound by their prior oral representations. I recommend that Defendants' motion to enforce settlement be **DENIED**.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the Parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections will be filed with the Clerk of the Court and served to all adversaries, with extra copies delivered to the chambers of the Honorable Vernon S Broderick, 40 Foley Square, Room 415, and to the chambers of the undersigned, 500 Pearl Street, Room 1970.  Failure to file timely objections shall constitute a waiver of those objections in both the District Court and on later appeal to the United States Court of Appeals. *See Thomas c. Arn*, 474 U.S. 140, 149-150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1)(c) (West Supp. 1995); Fed. R. Civ. P. 72(a), 6(a), 6(d).

**DATED: February 9, 2015**
**New York, New York**

**Respectfully Submitted,**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**